**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue. 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

***Attorneys for Plaintiff***
*- additional counsel on signature page-*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| J. PHILLIP MAX, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTURYLINK, INC., GLEN F. POST, III, SUNIT S. PATEL, JEFF K. STOREY, INDRANEEL DEV, and ERIC J. MORTENSEN,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff J. Phillip Max ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CenturyLink, Inc. ("CenturyLink" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of CenturyLink between May 10, 2018 and March 4, 2019, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and § 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts business and has offices within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant CenturyLink purports to provide various communications services to residential, business, wholesale, and governmental customers primarily in the United States. The Company is incorporated in Louisiana with global offices in El Segundo, California. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "CTL."

8. Defendant Glen F. Post, III ("Post") served as the Company's Chief Executive Officer ("CEO") from 1992 until May 23, 2018.

9. Defendant Jeff K. Storey ("Storey") has served as the Company's CEO since May 2018.

10. Defendant Sunit S. Patel ("Patel") served as the Company's Executive Vice President and Chief Financial Officer ("CFO") from November 2017 until September 28, 2018.

11. Defendant Indraneel Dev ("Dev") served as the Company's interim CFO from September 28, 2018 until his appointment as Executive Vice President and CFO on November 6, 2018.

12. Defendant Eric J. Mortensen ("Mortensen") has served as the Company Controller since July 1, 2018. Prior to that time, Mortensen served as the Company's Interim Controller from April 8, 2018 until July 1, 2018.

13. Defendants Post, Storey, Patel, Dev and Mortensen are sometimes referred to herein collectively as the "Individual Defendants."

14. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

15. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. On November 1, 2017, CenturyLink acquired Level 3 Communications, Inc., a purported telecommunications and internet service provider.

### Materially False and Misleading Statements

19. On May 9, 2018, the Company issued a press release announcing its first quarter 2018 results. Defendant Post highlighted that the Company "achieved solid results for first quarter 2018, the first full quarter of operations following the acquisition of Level 3." The Company reported consolidated income statements, including valuations of assets and liabilities.

20. On May 10, 2018, the Company filed a Form 10-Q for the quarter ended March 31, 2018 (the "1Q 2018 10-Q") with the SEC, which provided the Company's first quarter financial results and position. The 1Q 2018 10-Q was signed by Defendant Mortensen. The 1Q 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Post and Patel attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

21. The 1Q 2018 10-Q stated the following concerning the Company's internal control over financial reporting:

> **Changes in Internal Control Over Financial Reporting**
>
> Beginning January 1, 2018, we adopted Accounting Standards Codification (ASC) 606, Revenue from Contracts with Customers. We implemented internal controls to ensure we adequately evaluated our contracts and properly assessed the new accounting standard related to revenue recognition on our consolidated financial statements.

> CenturyLink completed the acquisition of Level 3, Inc. on November 1, 2017. The Company is currently integrating policies, processes, people, technology, and operations of the combined Company. Management will continue to evaluate the Company's internal controls over financial reporting as it continues the integration of Level 3. Other than the internal controls related to the adoption of ASC606 referenced above there were no changes in the Company's internal control over financial reporting that occurred during the first quarter of 2018 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

22. On August 9, 2018, the Company filed a Form 10-Q for the second quarter ended June 30, 2018 (the "2Q 2018 10-Q") with the SEC, which provided the Company's second quarter 2018 financial results and position. The 2Q 2018 10-Q was signed by Defendant Mortensen. The 2Q 2018 10-Q contained signed SOX certifications by Defendants Storey and Patel attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23. The 2Q 2018 10-Q stated the following concerning the Company's internal control over financial reporting:

> **Changes in Internal Control Over Financial Reporting**
>
> Beginning January 1, 2018, we adopted Accounting Standards Codification ("ASC") 606, Revenue from Contracts with Customers. We implemented internal controls to ensure we adequately evaluated our contracts and properly assessed the new accounting standard related to revenue recognition on our consolidated financial statements.
>
> CenturyLink completed the acquisition of Level 3, Inc. on November 1, 2017. The Company is currently integrating policies, processes, people, technology, and operations of the combined company. Management will continue to evaluate the Company's internal controls over financial reporting as it continues the integration of Level 3. Other than the internal controls related to the adoption of ASC 606 referenced above, there were no changes in the Company's internal control over financial reporting that occurred during the second quarter of 2018 that have materially affected, or are

reasonably likely to materially affect, the Company's internal control over financial reporting.

24. On November 9, 2018, the Company filed a Form 10-Q for the third quarter ended September 30, 2018 (the "3Q 2018 10-Q") with the SEC, which provided the Company's third quarter 2018 financial results and position. The 3Q 2018 10-Q was signed by Defendant Mortensen. The 3Q 2018 10-Q contained signed SOX certifications by Defendants Storey and Dev attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25. The 3Q 2018 10-Q stated the following concerning the Company's internal control over financial reporting:

> **Changes in Internal Control Over Financial Reporting**
>
> Beginning January 1, 2018, we adopted Accounting Standards Codification ("ASC") 606, Revenue from Contracts with Customers. We implemented internal controls to ensure we adequately evaluated our contracts and properly assessed the new accounting standard related to revenue recognition on our consolidated financial statements.
>
> We completed the acquisition of Level 3, Inc. on November 1, 2017. We are currently integrating policies, processes, people, technology, and operations of the combined company. We have extended our oversight and monitoring processes that support our internal control over financial reporting to include the acquired operations. We will continue to evaluate our internal controls over financial reporting as we continue the integration of Level 3.
>
> Other than this extension over the acquired operations, there were no changes in our internal control over financial reporting that occurred during the third quarter of 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

26. On February 13, 2019, the Company issued a press release reporting fourth quarter and full year 2018 results. Defendant Storey touted that "CenturyLink's focus on disciplined execution in 2018 enabled us to make significant progress integrating Level 3, including achieving our originally announced synergy target more than two years

earlier than expected." The Company also provided consolidated income statements, including valuations of assets and liabilities.

27. The statements referenced in ¶¶ 19-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) CenturyLink had undisclosed material weaknesses in its internal controls over revenue recording processes and the procedures for measuring fair value of assets and liabilities assumed in connection with its Level 3 Communications, Inc. acquisition; (ii) consequently, CenturyLink would delay the filing of its Form 10-K for the fiscal year ended December 31, 2018 despite initially reporting those financial results in a press release dated February 13, 2019; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

28. On March 4, 2019, the Company announced it would not be able to timely file its annual report for the period ended December 31, 2018 because it had "identified material weaknesses in internal controls over the Company's revenue recording processes and the procedures for measuring fair value of assets and liabilities assumed in connection with the Level 3 Communications, Inc." The Company's announcement stated, in relevant part:

> CenturyLink, Inc. (the "Company") is filing this Notification of Late Filing on Form 12b-25 with respect to its Annual Report on Form 10-K for the period ended December 31, 2018 (the "Form 10-K"). ***The Company has determined that it is unable to file its Form 10-K within the prescribed time period provided by the applicable rules of the Securities and Exchange Commission without unreasonable effort and expense.***

> ***The principal reason for the delay is that recently identified material weaknesses in internal controls over the Company's revenue recording processes and the procedures for measuring fair value of assets and liabilities assumed in connection with the Level 3 Communications, Inc. acquisition have created the need to conduct additional review and testing with respect to those processes prior to finalizing the assessment and the audits of the effectiveness of internal control over financial reporting as of December 31, 2018 and of the Company's financial statements as of and for the year ended December 31, 2018.***

(Emphasis added.)

29. On this news, CenturyLink's stock price fell $0.82 per share, or over 6%, to close at $12.15 per share on March 4, 2019.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of CenturyLink during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the

Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NYSE, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

(g) Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(h) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of*

*the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants)**

40. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43. The Company and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

44. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents

would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

45. The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

46. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

47. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not

disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

48. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

49. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of The Exchange Act Against The Individual Defendants)

50. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants

exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: March 12, 2019

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue
15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

1. I, J. Phillip Max, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against CenturyLink, Inc. ("CenturyLink" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire CenturyLink securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired CenturyLink securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in CenturyLink securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed March 6, 2019
(Date)

(Signature)

J. Phillip Max
(Type or Print Name)

**CenturyLink, Inc. (2019) (CTL)** **Max, J. Phillip**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 6/13/2018 | Purchase | 16 | $17.7800 |
| 9/12/2018 | Purchase | 13 | $22.8800 |
| 12/6/2018 | Purchase | 17 | $17.1700 |
| 2/22/2019 | Purchase | 127 | $13.3400 |